UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER BERNAICHE,

                         Petitioner,                      Case Number 2:09-cv-11296
                                                           Honorable Victoria A. Roberts

v.

JEFFREY WOODS,

                         Respondent.

_____/

## <u>OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, AND DENYING A CERTIFICATE OF APPEALABILITY</u>

This matter is before the Court on Christopher Bernaiche's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted in the Wayne Circuit Court of two counts of first-degree premeditated murder, MICH. COMP. LAWS § 750.316, three counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and felony firearm. MICH. COMP. LAWS § 750.227b. The trial court sentenced him to life without parole for the murder convictions, parolable life for the assault convictions, and a consecutive two-year sentence for the firearm convictions.

The petition raises four sets of claims: (1) the prosecutor committed multiple acts of misconduct; (2) a Food and Drug Administration ("FDA") warning issued a month after trial that Prozac can lead to aggressive or violent behavior, entitles Petitioner to a new trial; (3) Petitioner was denied the effective assistance of counsel at trial and on appeal; and (4) the state courts failed to hold an evidentiary hearing on Petitioner's ineffective assistance of counsel claims.

The Court finds that Petitioner's claims are without merit; the petition will be denied. The Court also denies Petitioner a certificate of appealability.

## I. Facts and Procedural History

Petitioner's conviction arise from an incident in which he shot five people at a bar, killing two of them.

The trial evidence revealed that Petitioner went to a bar and was playing pool and drinking when an altercation occurred that caused him to be forcibly ejected from the bar. He sustained some injuries during the fight. Petitioner announced that he wanted to come back in the bar, and wanted the person he fought with to come outside. John Clark, another patron, told Petitioner it was best to go home. Petitioner told Clark that he would be back.

Petitioner left, returning about forty-five minutes later with a gun. Petitioner entered the bar, fired his gun until the clip was empty, reloaded, and fired until the second clip was empty. When he walked back into the bar, Petitioner said, "let somebody fuck with me now." Petitioner fired into the air, and at people, moving down the bar towards the pool area. Petitioner left the bar, threw the gun under some vehicles in the parking lot, got in his truck, and drove away. When arrested by the police, he asked an officer to take it "easy on me," and added that, "I only did it because they beat my ass earlier."

Various patrons and employees of the bar testified to the shooting. Kristian Peters heard ten to twelve gunshots. She was shot in the left shoulder and  right arm. Steven Purdy heard a "pop," and saw a gunshot directed at Stull that hit him in the back. Stull, according to the medical examiner, had four gunshot wounds, and a grazing wound. The medical examiner who performed the autopsy on Kruszewski testified that he suffered eight gunshot wounds. Judy Clark testified that Petitioner fired one shot into the air. Clark could not say how many times Petitioner fired the gun, but it was multiple times. John Clark testified that Petitioner fired a shot into the air and then into Stull. Clark

testified that Petitioner fired more than three shots at Stull, and that Petitioner fired gunshots continually, emptying one clip and then reloading. Uselton testified that Petitioner shot the bar up. Rice heard over twenty gunshots. He saw Petitioner shoot Stull, Kruszewski, and he recalled that Petitioner fired two shots at him. One shot went into the padding of the bar and the other was down toward the bottom of the paneling of the bar.

These are the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from a December 27, 2002, altercation in which he fatally shot two people and wounded three others. At trial, defendant presented a defense of involuntary intoxication causing legal insanity, claiming his conduct was caused by the effects of the antidepressant drug Prozac. Defendant began taking Prozac approximately two months before the events at issue, and his physician had doubled his dosage just a few days before the incident. At trial, defendant presented Dr. Peter Breggin as an expert witness to support his defense that his violent behavior was caused by the effects of Prozac. Dr. Breggin testified that he specializes in clinical psychopharmacology, the study of how psychiatric drugs affect patients. Dr. Breggin indicated that he had substantial experience testifying at trials involving psychiatric drugs, including selective serotonin reuptake inhibitor (SSRI) drugs, the class of drugs that includes Prozac. Dr. Breggin testified that the Prozac drug defendant was taking both stimulated and depressed defendant, leaving him susceptible to uncontrollable violent urges which prevented defendant from conforming his behavior to the requirements of the law. Dr. Breggin explained that defendant displayed the symptoms of mania and akathisia while on Prozac, which were precursors to the violent episode. FN1
>
> FN1. Mania causes a person to feel very important and intolerant of anything that irritates him, and akathisia is a feeling of restlessness and an urge to be in constant motion.
>
> The prosecutor relied on two experts, Dr. Philip Margolis, a psychiatrist employed by the Wayne County Jail, and Dr. Stephen Norris, a psychologist employed by the Center for Forensic Psychiatry, to rebut defendant's insanity defense. Drs. Margolis and Norris did not give testimony that directly contradicted Dr. Breggin's theory that Prozac may cause some individuals to become aggressive and violent, but both opined that defendant was not legally insane while on Prozac

-3-

because he maintained the capacity to appreciate the wrongfulness of his actions and to conform his actions to the requirement of the law.

*People v. Bernaiche*, No. 261498, 2006 WL 1083596 (Mich. Ct. App. April 25, 2006).

Following Petitioner's conviction and sentence, he filed a direct appeal in the Michigan Court of Appeals, raising the following claims:

I. The prosecution did not present sufficient evidence at trial to prove that Petitioner acted with premeditation and deliberation.

II. The prosecutor committed misconduct by denigrating Petitioner's affirmative defense of involuntary intoxication caused by the unexpected chemical effects of the prescription medication Prozac.

III. The trial court improperly admitted expert testimony where neither prosecution expert had any experience with respect to the potential chemical effects of Prozac.

IV. The prosecutor failed to disclose a supplemental report prepared by one of its expert witnesses.

V. The prosecutor committed misconduct ridiculing and expressing personal beliefs with respect to the defense's expert witness.

VI. The prosecutor committed misconduct by suggesting: (A) that Petitioner had a prior conviction that did not exist; (B) and that Petitioner should be convicted because of his past alcohol and drug use.

VII. The prosecutor committed misconduct by commenting on Petitioner's exercise of his right to remain silent.

VIII. The trial court failed to give any of Petitioner's proposed supplemental jury instructions relating to involuntary intoxication rising to the level of insanity.

IX. The cumulative effect of the prosecutor's misconduct rendered Petitioner's trial unfair in violation of due process.

X. The cumulative effect of trial errors prejudiced Petitioner and caused an unfair trial.

While Petitioner was pursuing his direct appeal, he filed a motion for a new trial in the trial court. The motion asserted that the FDA had recently issued a public health advisory that Prozac

-4-

could cause aggressive or violent behavior, and that based on this new evidence, Petitioner was entitled to a new trial. The motion also alleged that the prosecutor violated a discovery order by failing to timely disclose a supplemental report issued by one of its expert witnesses. The trial court granted the motion for new trial, finding that the prosecutor violated its discovery order. The prosecutor appealed this order.

The Michigan Court of Appeals consolidated the two appeals, and affirmed the grant of a new trial. *Id*. The prosecutor appealed this decision, and the Michigan Supreme Court peremptorily reversed, stating:

> in lieu of granting leave to appeal, we REVERSE that part of the judgment of the Court of Appeals that affirmed the trial court's order granting the defendant's motion for new trial. Although the prosecutors violated their discovery obligation by failing to disclose their expert witness's supplemental report, the violation amounted to harmless error.

*People v. Bernaiche*, 480 Mich. 1046 (2008) (table).

The case then returned to the Michigan Court of Appeals for consideration of the other issues raised by Petitioner. The court of appeals issued an opinion affirming Petitioner's convictions. *People v. Bernaiche*, No. 261498, 2008 WL 2627600 (Mich. Ct. App. July 3, 2008).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, but the court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Bernaiche*, 482 Mich. 1078 (2008) (table).

Petitioner then filed the instant case, and later he filed a motion to stay so that he could return to the state courts to exhaust additional claims. The Court granted the motion, and Petitioner then filed a motion for relief from judgment in the trial court, raising claims regarding a new report on the effects of Prozac and ineffective assistance of trial and appellate counsel.

The trial court issued an opinion and order denying Petitioner's motion for relief from judgment. Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, but it was denied "for failure to establish entitlement to relief under MICH. CT. R. 6.508(D)." *People v. Smith*, No. 301634 (Mich. Ct. App. September 1, 2011). The Michigan Supreme Court then denied Petitioner's application for leave to appeal with citation to the same court rule. *People v. Smith*, 491 Mich. 885 (2012) (table).

On April 10, 2012 Petitioner returned to this Court and asked that the stay be lifted. This Court then entered an order lifting the stay. The case is now ready for decision.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court explained that "[a] federal court's collateral review of a state court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's

precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

### A. Prosecutorial Misconduct

Most of the claims Petitioner enumerates in his petition allege that the prosecutor committed acts of misconduct that rendered his trial fundamentally unfair. The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*,    U.S.    , 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard). The Court finds that none of Petitioner's prosecutorial misconduct claims entitles him to habeas relief.

### 1. Comments Disparaging Involuntary Intoxication Defense

Petitioner's first claim asserts that the prosecutor attacked the validity of involuntary intoxication due to the ingestion of Prozac as a defense. The Sixth Circuit has applied Supreme

Court precedent from *Donnelly* and *Darden* in considering whether a prosecutor's denigration of the legally viable defense of insanity constituted prosecutorial misconduct. See *Gall v. Parker*, 231 F.3d 265, 311-312 (6th Cir. 2000); overruled on other grounds by *Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003). During closing argument, the prosecutor in *Gall* significantly misrepresented the psychological evidence and disparaged the possibility that psychological evidence may ever be worthy of belief. *Id*. at 312-13.

The prosecutor also warned that Gall would go free if found not guilty for reason of insanity. During his closing, the prosecution stated:

> Now folks are we going to turn [Gall] loose on society by reason of insanity[?]" J.A. at 1588-89. Seconds later, he repeated: Gall "cannot escape the ends of justice by retreating within the safety of his own skull!" J.A. at 1589. At another point, the [prosecutor] stated that if the jury were to believe Dr. Toppen's testimony, "then turn him loose.

*Id*. at 315.

The Sixth Circuit found that the prosecutor's remarks "comprised part of a broader strategy of improperly attacking Gall's insanity defense by criticizing the very use of the defense itself, rather than addressing its evidentiary merits head on." *Gall*, 231 F.3d at 313. The court noted that "[c]ourts have long castigated prosecutors when their efforts to rebut an insanity defense constitute no more than an attack on the rationale and purpose of the insanity defense itself." *Id*. In reaching its conclusion that the prosecutor's remarks violated due process, the *Gall* court recognized that, in a case raising the insanity defense, a prosecutor is entitled to vigorously attack the defense. However,

> because ours is a system of law, the arsenal available to a prosecutor to achieve that legitimate goal is limited to arguments rooted in properly introduced evidence and testimony rather than words and tactics designed to inflame passions, air unsubstantiated prosecutorial beliefs, and downplay the legitimacy of a legally recognized defense.

Id. at 316. In light of the extensiveness of the prosecutor's comments and his suggestion that the defendant would go free if found not guilty, the court granted habeas corpus relief. *Id.*

This case does not present the same type of egregious conduct that occurred in *Gall*. Petitioner refers to several specific examples of the prosecutor attacking his defense. During opening statement, the prosecutor stated "I want you to consider the details of this case. Not silliness. The details of this case." T 1/22/04, 28. During cross-examination of the defense expert witness, the prosecutor referred to the expert's theory as "Prozac made him do it." T 2/11/04, 169, 177, and 188; T 2/11/04, 109. During a motion hearing held outside the presence of the jury, the prosecutor referred to the defense as consisting of "junk science," and as a "spurious defense." T 2/11/04, 19.

None of the examples relied upon by Petitioner constituted an attack upon the use of an involuntary intoxication defense in itself. The reference to "silliness" in the opening statement was not a clear reference to the use of the defense in itself, nor did it ask the jury to ignore any evidence. In fact, the term was contrasted with the prosecutor's request to the jury to look at the details of the case. Characterizing the defense expert's opinion as "Prozac made him do it," was not disparaging. It gave the prosecutor a roughly accurate short-hand manner to word his questions during cross-examination. The defense expert, in fact, opined that the Prozac was a significant cause of Petitioners's violent outburst. Lastly, the references to "junk science" and a "spurious defense" occurred outside the presence of the jury and, therefore, could not have had any impact on the trial.

-10-

Moreover, the Court reviewed the prosecutor's closing argument. There, the prosecutor did not attack the nature of the defense. Rather, the argument focused on the facts surrounding the shootings, which the prosecutor used to suggest that Petitioner acted with premeditation and deliberation. The prosecutor only turned to the defense during the last few pages of the argument. T 2/17/04, 108-112. He argued that the facts of the case refuted the suggestion that Petitioner was mentally ill. He argued that the defense expert was too dismissive of the reports that disagreed with his opinion, and he noted that the defense expert conceded that humiliation and shame also caused Petitioner to shoot the victims. In other words, the prosecutor did not improperly attack the use of Petitioner's involuntary intoxication defense as Petitioner claims, but argued that he had not shown by a preponderance of the evidence that the shootings were the result of involuntary intoxication caused by Prozac.

Accordingly, Petitioner has not demonstrated entitlement to habeas relief based on this claim.

**2. Comments Disparaging Defense Expert Witness**

Petitioner's third claim asserts that the prosecutor unfairly disparaged the defense expert. He asserts that the prosecutor unfairly characterized the expert as a "crusader" against Prozac, and that he had devoted a substantial amount of time in studying and discrediting the drug. The prosecutor suggested that the defense expert's opinions regarding Prozac and psychiatric medications were his alone and were not widely shared by other professionals. Petitioner argues that the prosecutor also suggested without foundation that during another trial the defense expert was not qualified as an expert witness.

The Court reviewed the statements in question. First, Petitioner's characterization of the record leaves something to be desired. The defense expert admitted during voir dire that he had

-11-

failed to be qualified as an expert on four occasions. He also admitted to instances where other courts had found that he was "blinded by bias." He admitted that he was not board certified and that he did not have any hospital privileges. The Court finds that the thrust of the complained of statements was a proper effort by the prosecutor to show that the defense expert was biased. The prosecutor's questions and statements suggested that the expert's professional life was largely devoted to attacking the safety of drugs such as Prozac, and, therefore, that the jury had reason to doubt his veracity. Read in context, the comments were proper and did not render Petitioner's trial fundamentally unfair.

### 3. Suggestion Petitioner Had Committed Prior Acts of Violence

Petitioner's fourth claim asserts that the prosecutor unfairly suggested that Petitioner committed acts of violence on three occassions prior to taking any Prozac in which the police were called. During cross-examination of the defense expert, the prosecutor referred to three police reports indicating a police response to domestic incidents involving Petitioner. The prosecutor suggested that since these incidents occurred prior to the time he was prescribed Prozac, it was not the drug that made him a violent person. The expert responded by noting that it was Petitioner who called the police on two of the occasions, complaining that his girlfriend had assaulted him. Petitioner argues that the questions nevertheless unfairly suggested a violent past when no such evidence was presented. The Michigan Court of Appeals found that the questioning was proper; no misconduct occurred.

In *People v. Musser*, 53 Mich. App. 683 (1974), the Michigan Court of Appeals held that testimony of prior arrests, convictions, and antisocial conduct is ordinarily not admissible, but is admissible for purpose of determining question of sanity, once questioned. Here, one of the

prosecutor's expert witnesses, Dr. Margolis, testified about Petitioner's  prior police contacts. Dr.

Margolis testified that one or two contacts involved Petitioner's girlfriend Audette and portrayed

them, at a minimum as "mutual combatants:

> They argued a lot between June and December of 2002 and there were
> several breakups. . . .I think the first police report was in August. At any rate, it had
> to do with arguments with Audette. And there were two others later on in October
> or something like that, whereby they both had bruises, there was some physical
> fighting. And then one time when Audette apparently wouldn't leave Chris'
> apartment and she was kicked out of the apartment and she broke a window and there
> was–there was a good deal of, at least verbal argument at that time.

Tr. 02/11/04, 96.

Dr. Margolis also testified to an incident occurring four days before Petitioner began Prozac

therapy. There was an altercation with a friend in a bar. Margolis thought they might have been

arguing over a girl. Petitioner and his friend ended up at Petitioner's house where they fought on the

lawn. Petitioner admitted he was brandishing a cue stick, but the police report identified the weapon

as a pipe. All parties decided not the seek charges. Tr. 02/11/05, 97.

Accordingly, there was a foundation for the prosecutor's characterization of the contents of

the police reports. Defense counsel could have, but chose not to, explore the exact contents of the

reports. The prosecution was permitted under state law to elicit testimony regarding prior anti-social

behavior. The prosecutor allowed the defense expert to give mitigating explanations for the conduct

described in the police contacts, and he did so in some lengthy answers. Tr. 02/05/04, 193-197.

Simply put, there was no misconduct on the part of the prosecutor. Therefore, this claim does not

provide a basis for habeas relief.

**4. Reference to Petitioner's Prior Use of Alcohol and Drugs**

Petitioner's fifth claim asserts that the prosecutor unfairly referred to Petitioner's prior use

of drugs and alcohol. The prosecutor theorized that if Petitioner was intoxicated on the night of the shooting, it was due to the voluntary use of alcohol not Prozac.

Evidence to support this theory was relevant under state law. Under Mich. Comp. Law § 768.21a(2), "[a]n individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances."

The prosecutor presented evidence, pursuant to this rule, that Petitioner was both an alcoholic and a drug abuser. Dr. Stephen Norris, with the Center for Forensic Psychiatry, evaluated Petitioner. Petitioner indicated to Norris a history of alcohol abuse, alcohol-induced blackouts, experienced DTs, and would drink to aid in falling asleep. Petitioner reported drinking every day the week before this incident happened, five to six beers, or up to a half of a fifth of hard liquor. Petitioner said the alcohol made him feel better about himself, made him feel capable of anything, and feel indestructible. Petitioner reported that on that night, he drank a beer and took a Vicodin at his house, and then five or six beers and three shots at the bar. Tr. 02/17/04, 7-14.

Dr. Phillip Margolis reviewed the reports relevant to Petitioner and interviewed him. Margolis took Petitioner's history, including pre-Prozac counseling, arguments, and fights. Petitioner told Margolis that he had been drinking on the day of this incident–three or four beers, and a couple of "lemon drops." He said that he had a drinking problem and admitted that he took one Vicodin on the day of the occurrence because he wanted to get high because he was angry that day. Tr. 02/10/04, 91-107.

Dr. Michelle Hages testified that Petitioner told her that he was drinking daily, and drinking

-14-

quite a bit–to the point of intoxication. Police Officer Steven Mercure testified that he arrested Petitioner. Mercure opined that Petitioner smelled of intoxicants when he took him into custody. Mercure did not believe, however, that Petitioner was intoxicated. Steven Purdy testified that Petitioner acted like he had consumed some alcoholic beverages when the altercation began. Micah Buchin thought Petitioner had one drink.

Based on this testimony, it was appropriate for the prosecutor to attack the involuntary intoxication defense by referring to Petitioner's prior alcohol use and his use on the day of the shooting. There was no misconduct.

### 5. Comment on Petitioner's Decision not to Testify

Petitioner's sixth claim asserts that the prosecutor committed misconduct by commenting on Petitioner's choice not to testify at trial.

In *Griffin v. California*, 380 U.S. 609 (1965), the Supreme Court held that "the Fifth Amendment. . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id*. at 615.

During the questioning of Petitioner's mother, the prosecutor stated: "And Mr. Bernaiche, he obviously is in a better position to decide or to tell us as to, you know, how many pills he was taking, et cetera, etcetera, correct?" The defense immediately objected.  Tr.  02/4/04, 29. The trial judge sent the jury out, listened to the tape of the statement, and then the trial court adjourned for the day, informing the attorneys she would address the issue the next day.

The next morning, Petitioner's counsel asked for a curative instruction rather than a mistrial:

Considerable time was spent yesterday grappling with an issue that we believe was purposely put into play by the prosecution, specifically the question by the prosecutor that intimated that Mr. Bernaiche could tell us about how many pills he took, etc., etc. And that's in our judgment, a very clear violation of his constitutional

right to remain silent, but under the federal constitution and under the Michigan statute.

*          *          *

Notwithstanding that, it's a curative instruction that we've asked for. We have filed a pleading with the Court in that regard. We've discussed it in chambers with the Court. And the pleading reflects Mr. Bernaiche's signature as agreeing that this is the appropriate way to proceed.

Tr. 02/5/04, 40-41.

The trial court stated:

The defendant has decided, for strategy reasons, if I understand it, that while they view the statement, the question as a grounds for mistrial, the Court is not going to reach a ruling in that matter inasmuch as they have requested a curative instruction rather than the Court hearing further argument on and further law presented.

Id. 42. When the jury returned, the trial court gave a cautionary instruction. Id. 45.

After he was convicted, Petitioner decided that the cautionary instruction was insufficient, and argued that he was entitled to a mistrial. The Michigan Court of Appeals found that Petitioner waived the issue and extinguished any error by deciding not to ask for a mistrial.

One who intentionally relinquishes or waives a known right may not subsequently seek appellate review of a claimed deprivation of that right, because his waiver extinguishes any error. *United States v. Olano*, 507 U.S. 725, 730-34 (1993). One who waives his [or her] rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. *Id*. at 731. Forfeiture is "the failure to make the timely assertion of a right" and, unlike waiver, forfeiture does not extinguish an error. *Id*. at 732. The court need not directly address the issue to the defendant, nor is defendant required to personally waive objection. The waiver must, however, arise out of voluntary affirmative conduct—it must be an intentional relinquishment or abandonment. *Id.*

-16-

Here, the record shows voluntary affirmative conduct on behalf of Petitioner to waive this claim. Defense counsel immediately objected to the improper question, and the trial court adjourned the trial to give Petitioner time to decide on what sort of remedy for the error he sought. Petitioner decided on a curative jury instruction rather than a mistrial. Petitioner personally signed his name to a document seeking this remedy. This conduct extinguished any error. Therefore , the Court of Appeals properly decided that this claim was waived at trial.

## 6. Concealment of Expert Witness Report

Petitioner's seventh and eighth claims assert that the prosecutor withheld a supplemental report submitted by one of it's experts, Dr. Margolis. The existence of the report was discovered during trial, and as a result, the trial court limited the testimony Dr. Margolis. After conviction, the trial court granted Petitioner a new trial due to the prosecutor's violation of the discovery order.

The Court reviewed the report. It  summarizes scientific studies regarding the side-effects of drugs such as Prozac. It noted a small group of subjects who experienced mania or agitative effects, but the conclusion of the report supported the prosecutor's position that Prozac was not the cause of the shootings:

> Thus, although it is true that in a small proportion of cases, SSRI medication may cause mania, hypomania, or akathisia, it would be misleading to attribute Christopher Bernaiche's behavior to these factors, since he had no symptoms of the above conditions. Furthermore, our review of the current literature on treatment with SSRIs in patients who did not have those symptoms, there is no indication of increased aggression or violent behavior. On the contrary, the majority of the current scientific literature on this subject reports decreases in such irritability, aggression, and violence in patients treated with SSRI medications.

After the trial court and Michigan Court of Appeals found that the failure of the prosecutor to timely disclose this report to Petitioner entitled him to a new trial, the Michigan Supreme Court found that Petitioner was not entitled to relief because any error was harmless.  This Court agrees.

-17-

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "[E]vidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (quoting *Cone v. Bell*, 556 U.S. 449, 469-70 (2009)).

Here, Petitioner has not shown a reasonable probability that the result of the proceeding would have been different. Indeed, had the report been disclosed prior to trial, Dr. Margolis would have been permitted to testify more generally about studies refuting the notion that Prozac is associated with causing violent behavior. The report contained information regarding studies tending to contradict the defense expert's testimony. Dr. Margolis described studies in which Prozac was linked to decreased aggression in laboratory animals and increased positive social interactions in monkeys, and then detailed a number of human studies with similar findings, and refuted the link between Prozac and violent behavior. He is also cited a study of 127 patients who experienced "'anger attacks,'" finding that 71% of patients being treated reported a decrease in such attacks.

Dr. Margolis also discussed the issue of alcohol consumption and Prozac, stating that those who drank had the same responses as abstainers regarding decreases in aggression and irritability. The last two paragraphs of the report state that defendant had no symptoms of mania or hypomania, or akathisia; as he had no symptoms, and no indication of increased aggression or violent behavior. Finally, the report references a majority of current scientific literature reporting a decrease in irritability, aggression, and violence in patients taking SSRI medications.

-18-

Petitioner has not demonstrated that he was prejudiced by exclusion of the report; he is not entitled to habeas relief based on that claim.

## B. Newly Discovered Evidence

Petitioner claims that the discovery of new evidence entitles him to a new trial. Petitioner points to the existence of new reports by the FDA regarding SSRIs and Prozac that he claims better support his involuntary intoxication defense.

A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a new trial on the basis of newly discovered evidence, is not cognizable in a habeas proceeding. See *Monroe v. Smith*, 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001). Such a claim is not founded on any alleged constitutional violation, but on principles of state law. One court explained:

> The criteria for a trial court in granting or denying a new trial are matters of state law. As such an incorrect application would not be grounds for federal habeas corpus relief, unless the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."

*Ward v. Wolff*, 499 F. Supp. 1129, 1131 (D. Nev. 1980) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962)); see also, *Buford v. Perini*, 805 F.2d 1033, 1986 WL 18098, at *3 (6th Cir. 1986) ("[T]he denial of petitioner's post-trial motion [for new trial based upon newly discovered evidence] is simply a matter of state law which cannot serve as a basis for federal habeas corpus relief."); *Subilosky v. Callahan*, 689 F.2d 7, 9 (1st Cir. 1982).

Moreover, to the extent that Petitioner is presenting this claim as a free-standing claim of actual innocence based on newly-discovered evidence, such claims "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the

underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, the United States Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. See *House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the United States Court of Appeals for the Sixth Circuit ruled that a free-standing claim of actual innocence based upon newly discovered evidence does not warrant federal habeas relief. See *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [Petitioner] is not entitled to relief under available Supreme Court precedent."); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007). Consequently, Petitioner's assertion that the state courts erred in denying him a new trial based upon newly-discovered evidence, or that he is entitled to habeas relief on his claim, fails to state a claim upon which federal habeas relief may be granted.

### C. Ineffective Assistance of Counsel

Petitioner's ninth and tenth claims assert that Petitioner's trial and appellate counsel were ineffective for failing to raise some of Petitioner's prosecutorial misconduct claims at trial and during his direct appeal. These claims are without merit; the Court finds  the underlying

prosecutorial misconduct claims are meritless.

Trial counsel's failure to make a frivolous or meritless motion or objection does not constitute ineffective assistance of counsel. See *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007). And, appellate counsel's failure to raise an issue on appeal constitutes ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. See *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005). Therefore, failing to raise a meritless claim that has no chance of succeeding does not constitute ineffective assistance of appellate counsel. See *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Petitioner's ineffective assistance of counsel claims do not merit relief.

### D. Failure of State Court to Hold Evidentiary Hearing

Petitioner's eleventh claim asserts that the state courts violated his due process rights by failing to hold an evidentiary hearing on his claims of ineffective assistance of counsel.

Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); accord *Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Accordingly, the trial court's failure to hold an evidentiary hearing, even if erroneous under state law, does not entitle petitioner to habeas relief. See *Chaussard v. Fulcomer*, 816 F.2d 925, 932 (3d Cir. 1987).

This claim is without merit.

-21-

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted; reasonable jurists could not debate the Court's assessment of Petitioner's claims.

## V. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

A certificate of appealability is **DENIED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
United States District Judge

-22-

Dated:  July 30, 2013

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 30, 2013.<br><br>S/Carol A. Pinegar<br>Deputy Clerk |